The action was brought to recover the price of two carpets, the transaction in regard to which is presented in the following correspondence.
ROBESON, N.C. Dec. 10th, 1866.
WALTER CROOK, JR., ESQ., Baltimore:
SIR: — General R. of Wilmington, has kindly furnished me your name, and recommends your house.
I want similar carpets for two rooms, good three ply carpet, medium color, small figures. I would prefer no white in them. Description of rooms: No. 1, 14 feet 6 inches by 16 feet 3 inches square; No. 2, 14 feet 2 inches by 16 feet 3 inches square. For jams of chimney, four (4) pieces, one breadth, each piece (5, 8 in.) five feet eight inches long.
I want good durable carpets, and wish you to have them made up. You can forward them to my address at Wilmington, N.C. per Express, C. O. D., or else, advise me of the cost, and I will remit while you are having them made up. Number each as per description.
 Yours respectfully, D. S. COWAN. *Page 575 
This letter was received by the plaintiff upon the 14th of December. (744)
The defendant, receiving no reply, sent the following telegraphic dispatch:
WILMINGTON, N.C. Dec. 26th 1866.
(Received at Baltimore, December 26th:)
To WALTER CROOK, JR., Baltimore Street:
Have you received an order for carpets? If so, do you intend sending them? D. S. COWAN.
The next communication was the following:
BALTIMORE, Jan. 16th, 1867.
MR. D. S. COWAN, Wilmington, N.C.:
DEAR SIR: — I have the pleasure to notify you that we have this day received advice from Adams' Express Company that the carpets ordered by you through letter dated December 10th, 1866, are at their office in Wilmington on hand, their notification having, up to date, received no reply. Be good enough to respond. The goods were shipped you December 21st, 1866.
 Yours, etc., WALTER CROOK, JR.
ROBESON, N.C. Jan. 18th, 1867.
WALTER CROOK, JR., Baltimore, Md.:
DEAR SIR: — I was somewhat surprised on yesterday at receiving a notification of the fact that a roll of carpeting was in the Express office for me. I declined to receive it, and cannot let it go back to you, without a word of explanation in justification of myself.
It was on or about the 10th December, 1866, that I wrote you ordering carpets. I received no acknowledgement of my letter, and was in doubt whether it ever reached you. On the 26th of December, I dispatched you a telegram from Wilmington to the following effect, to wit:
WALTER CROOK, JR., Baltimore Street, Baltimore:
Have you received an order for carpets? If so, do you intend sending them? (Signed) D. S. COWAN.
The above copy I got from the original on file in telegraph office in Wilmington on yesterday. I called at telegraph office frequently from 26th Dec. to 2nd Jan. 1867, seeking a reply, but received none. Concluding that my letter had miscarried, and consequently you did not understand the dispatch, I bought carpets in Wilmington and had them made up. Agreeable to the above facts, I cannot think I am morally bound to take the carpets. Should you think differently, I will be pleased to hear from you.
 Yours very respectfully, D. S. COWAN.
Some other letters passed between the parties, presenting their respective views of the controversy, but they are not (745) material here. *Page 576 
It was further in evidence that by general custom, known to all who had any dealings with the Express Company, the letters C. O. D. marked upon goods, means that such Company is not to deliver the goods without payment of the bill for the purchase money which accompanies them; and that the carpets sent to the defendant were so marked.
The counsel for the defendant requested the Court to instruct the jury:
1. That there was no contract;
3. That, if there was a contract, the failure of the plaintiff to reply to the original order of the defendant, and to his dispatch of Dec. 26, 1866, authorized the latter to believe that the order (746) would not be complied with, and that, so, the defendant was discharged.
The Court declined to give either instruction.
Verdict for the plaintiff, etc. Appeal by the defendant.
If one writes to another, who has not offered his property for sale, proposing to buy, the letter is of course nothing but an offer, and is of no force until the other answers and accepts the offer; then the contract is made. But if one holds his property out for sale, naming the terms, and another accepts the terms, the contract is complete; or, if one bids at an auction, and the hammer falls, the contract is complete; or, if one advertises, offering a reward for something to be done, as soon as the thing is done the contract is complete, and the reward is due. So, in our case, the plaintiff held himself out as a carpet manufacturer and vender, and offered his carpets for sale, and invited purchases; and when the defendant sent him the unconditional order for carpets, that was an acceptance of his offer, and the bargain was struck, and the moment that the carpets were delivered to the Express, the agent designated by the defendant to receive and transport them and collect the bill, the delivery was made, and the property passed to the defendant. But, if that were not so, our case is stronger than that. Consider the case as if the first offer was made by the defendant to the plaintiff. The defendant knowing that the plaintiff was a carpet vender, sent him an unconditional order for carpets, specifying the Express as the agent to receive and transport them, and to collect the bill, and the order was filled to the letter. Thereby, the offer was accepted, the property in the carpets passed to the defendant, and he became liable for the price, as for goods sold and delivered. The order *Page 577 
was an offer, the filling the order was an acceptance; and (747) an offer and an acceptance is the common definition of a contract.
The defence is put upon this ground: the defendant's letter to plaintiff was only an offer, there was no contract until the plaintiff accepted it and notified the defendant; and the notice ought to have been by mail, within a reasonable time.
The plaintiff says, that he did assent immediately upon the receipt of the order, and forwarded the carpets as soon as he could have them made up, which was within a reasonable time — seven days, and that this was all he had to do. The point of divergence between the plaintiff and defendant is, that the defendant says, the plaintiff ought to have notified him by mail that he had accepted the offer, and forwarded the goods; that merely filling the order, although in the exact terms thereof, was not an acceptance, without notice. The propriety of giving notice by mail, must depend a good deal upon the circumstances of each particular case; — as, if the order requires it, or, if the order is not sufficiently specific, and leaves something further to be arranged, or if considerable time must pass in the manufacture of the article, or, if the route or means of transportation is not known, or the voyage long and dangerous, and the like. But if an offer and an acceptance — an unconditional and specific order, and an exact fulfillment, as in this case, does not complete the contract, how would it be possible to complete a contract by mail? A sends an unconditional order to B, and, instead of B's filling the order, he writes back that he accepts the order and will fill it, but in the meantime, A may have changed his mind, and lest he has, he must write back to B and so on, for ever. Adams v.Lindsell, 1 B Ald. 681, is the leading English case, illustrating, and repudiating, this circumlocution; and that case has been followed ever since both in England and America, as is said (748) in 1 Parsons on Contracts, note p, page 483. In that case, it was said, speaking of the above rule, "If it were not so, no contract could ever be completed by post. For if the defendant was not bound by his offer, when accepted by the plaintiff, until the answer was received, then the plaintiff ought not to be bound until after he had received the notification that the defendant had received his answer and asserted to it. And so it might go on ad infinitum.
We admit that the rule, that filling an order completes the contract, is confined to unconditional and specific orders. And, if the purchaser thinks proper, he can make his order as guarded as he pleases. He may say, "I want such goods, — can you furnish them? If so, at what price, and within what time? Inform me by return mail. I will pay if the goods arrive safe, — otherwise not," — and *Page 578 
the like. Then he will not be liable unless the terms are strictly complied with.
In the case before us, the order was unconditional and specific, and was complied with to the letter. The defendant did not ask the plaintiff to inform him whether he would fill the order. He had no doubt about it. It was the plaintiff's business to fill such orders, and the defendant had confidence in him. So far from requiring the plaintiff to notify him by mail, he impliedly informed him that he need not do so: Send the goods by Express, C. O. D., without more say; and send the bill by Express for collection; or, if you are afraid to trust me, then, and in that case only, you may write to me and I will send the money, before you ship the goods, — is, substantially, what the defendant said in his order to the plaintiff. There was no use in informing the defendant by mail of the shipment of the goods, because the Express is as speedy as the mail; and there is certainly no magic in sending by mail. And sending the goods is the (749) best notification.
The defendant also complaint that the plaintiff did not answer his telegram. The answer is, that neither the mail nor the telegraph had been designated as the means of communication, but the Express. And it was the defendant's misfortune, if not his fault, to go elsewhere than to the place designated, for information. His duty ended when he delivered the goods to the agent designated by the defendant, the Express, with the bill for the price to collect. The goods were at their destination — the Express office — when the defendant sent his telegram. He did not go to the Express office at all, and offers no explanation why he did not, but left the plaintiff to infer, as he seems to have done, that his purpose was to avoid the contract.